IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| PHOEBE DACHA, *et al.*, <br>     Plaintiffs, <br><br> v. <br><br> DAVID SCOTT LANDRY, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> )     Civil Action No. 3:25CV516 (RCY) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

This is a § 1983 suit for damages in which *pro se* Plaintiffs Phoebe Dacha and Mary A. Ongenge-Okwiri allege that various Defendants, known and unknown, conspired against Plaintiffs and violated their due process rights and Fourth Amendment rights during the course of state Juvenile & Domestic Relations ("J&DR") Court proceedings against Plaintiff Ongenge-Okwiri. Am. Compl. 8, ECF No. 3. The matter is before the court on Plaintiffs' Emergency Motion for Temporary Restraining Order ("TRO") to Prevent Forced In-Person Court Appearances, Compel Discovery, Ensure Due Process, and Request Change of Venue ("Motion for TRO"), ECF No. 7, filed on July 14, 2025. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court finds that the requested relief is not available, as the Court must abstain from hearing the case in its entirety under the *Younger*[1] abstention doctrine.

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

## I. FACTUAL BACKGROUND[2]

On June 24, 2025, Plaintiffs appeared before Defendant Judge David Scott Landry in the Chesterfield J&DR Court to address a claim that Plaintiff Ongenge-Okwiri (Plaintiff Dacha's mother) assaulted her grandson (Plaintiff Dacha's son). Am. Compl. ¶¶ 1–2, 10–11, ECF No. 3. Plaintiffs allege that Defendant Paris Nicola Veillard, the Guardian ad Litem for Plaintiff Dacha's son, Defendant Gary Christopher White ("Mr. White"), the child's father, and Defendant Lakeisha Travonne (Hackney)[3] White ("Mrs. White"), the child's step-mother, conspired against Plaintiffs, insofar as Defendant Veillard exhibited bias favoring Mr. White and Defendants Mr. and Mrs. White submitted false CPS reports against Plaintiff Dacha. *Id.* ¶¶ 19–21.

Plaintiffs also contend that Defendant Kim Gretes, a Commonwealth's Attorney, "verbally attacked" Plaintiff Dacha during the J&DR hearing, characterizing Plaintiff Dacha's writ petition to the Virginia Supreme Court as "subversive." *Id.* ¶ 22. Defendant Gretes also requested permission to record the proceedings on her personal device. *Id.* ¶ 22A.

Throughout the proceedings Plaintiff Dacha nodded but did not otherwise speak or interfere with the hearing. *Id.* ¶ 3. Defendant Judge Landry nevertheless halted the proceedings to find Plaintiff Dacha in contempt based on "[g]estures" and ordered Plaintiff Dacha to leave the courtroom. *Id.* ¶ 4. Defendant Landry then ordered the bailiffs to "get her," as Plaintiff prepared to leave the courtroom. *Id.* Plaintiff Dacha was seized by multiple court officers, which resulted in her falling to the ground. *Id.* ¶ 5. Plaintiff Dacha was arrested for contempt of court for allegedly failing to comply with the JD&R court's order to stand. *Id.* ¶ 5.

---

[2] The facts set forth below are derived from the pleadings filed with this Court. These are preliminary factual findings based on the existing record which shall be used for the limited purpose of ruling on the Motion for TRO.

[3] In the case caption, Plaintiffs list "Lakeisha Travonne White," but throughout the Amended Complaint they refer to her as "Lakeisha Hackney White". To avoid further confusion, the Court will simply refer to this Defendant as "Mrs. White."

2

As Plaintiff Dacha was being seized, Plaintiff Ongenge-Okwiri stood and verbally objected, stating "stop hurting [Plaintiff Dacha]." *Id.* ¶ 12. Defendant Landry found Plaintiff Ongenge-Okwiri in contempt, too, and likewise ordered bailiffs to "get her." *Id.* ¶ 14. Following her arrest, Plaintiff Dacha was detained in Chesterfield County Jail for ten days. *Id.* ¶ 7. At no point was Plaintiff afforded a hearing or an opportunity to defend herself. *Id.* ¶ 6. Plaintiff Ongenge-Okwiri was detained for several hours "without a written contempt order, hearing, or explanation of any specific charge." *Id.* ¶ 16. Both Plaintiffs sought medical evaluation upon their release, which revealed a variety of injuries. *Id.* ¶¶ 8, 17. Since Plaintiff Dacha's release, she has appealed her contempt conviction to the Virginia Court of Appeals. *Id.* ¶ 23.

## II. PROCEDURAL HISTORY

On July 7, 2025, Plaintiffs filed their Complaint. ECF No. 1. Shortly thereafter, on July 10, 2025, Plaintiffs filed their Amended Complaint as a matter of right. Am. Compl., ECF No. 3. Four days later, Plaintiffs filed the instant Motion for TRO, as well as a Motion to Admit the FOIA Video, presumably in support of Platintiffs' Motion for TRO. Mot. TRO, ECF No. 7; Mot. Admit Video, ECF No. 8. Plaintiffs have yet to return proof of service as to any Defendant.

## III. STANDARD OF REVIEW

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to relief," *Miller v. Garland*, 674 F. Supp. 3d 296, 305 (E.D. Va. 2023) (quoting *Mountain Valley Pipeline, LLC v. W. Pocahontas Prop. LP.*, 918 F.3d 353, 366 (4th Cir. 2019)), and "may never be obtained as a matter of right," 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2948 (3d ed. 2002). Thus, the party who moves for a TRO bears the burden to "clearly establish[]" that such relief is warranted. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). To show such entitlement, the movant must establish the same four

factors that govern preliminary injunctions: (1) the likelihood of irreparable harm to the plaintiff if the TRO is denied; (2) that such harm outweighs the likelihood of harm to the defendants if the TRO is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) that the public interest weighs in favor of granting the TRO. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## IV. DISCUSSION

In the instant Motion for TRO, Plaintiffs primarily[4] ask the Court to "[e]njoin Chesterfield [J&DR] Court, Chesterfield Circuit Court, and other associated courts from compelling Plaintiffs to appear in person at any hearings between July 22 and September 5, 2025. Mot. TRO 4. Plaintiffs' primary concern appears to be appearing in court before Defendant Landry on July 22, 2025. Mot. TRO 2. Before the Court can assess whether to grant the requested injunctive relief, however, it must first determine whether it is appropriate to hear the case under the *Younger* abstention doctrine. *Younger*, 401 U.S. 37.[5]

**A. *Younger* Abstention Applies in This Case and Precludes Injunctive Relief**

The *Younger* abstention doctrine "rests on the fundamental precepts of equity and comity," *Robinson v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017), and originated as a doctrine prohibiting federal courts from interfering with ongoing criminal proceedings or "noncriminal judicial proceedings when important state interests are involved," *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351–52 (4th Cir. 2005) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "[C]ourts of equity should not act, and particularly should not

---

[4] Plaintiffs also ask that the Court "[o]rder that Plaintiffs may appear remotely for all proceedings," "[c]ompel the Commonwealth's Attorney to produce all requested discovery," "[o]rder a change of venue to a neutral location," and "[a]llow time for Plaintiffs to obtain counsel." Mot. TRO 4–5. Because the Court will dismiss this action on the basis of *Younger* abstention, the Court need not reach these issues.

[5] In conducting this analysis, the Court assumes without deciding that Plaintiffs have otherwise stated an actionable constitutional claim.

4

act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44; *Air Evac EMS v. McVey*, 37 F.4th 89, 95 (4th Cir. 2022) ("[F]ederal courts must show 'proper respect for state functions' . . . . [And a] proper extension of such respect is taking judicial federalism seriously, and not losing sight of the fact that 'state courts are fully competent to decide issues of federal law.'" (first quoting *Younger*, 401 U.S. at 43–44; and then quoting *Harper*, 396 F.3d at 355)); *see also Smith v. Smith*, 2007 WL 3025097, at *7 (W.D. Va. Oct. 12, 2007) (finding that "claims for declaratory relief are subject to dismissal under *Younger*.").

Underlying the *Younger* abstention doctrine is the "vitally important rule of comity, inspired by principles of federalism, that directs federal courts to abstain from deciding constitutional challenges to state action however meritorious the complaint may be, whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hill v. Courter*, 344 F. Supp. 2d 484, 490–91 (E.D. Va. 2004) (alterations in original) (quoting *Cinema Blue of Charlotte, Inc. v. Gilchrist, III*, 887 F.2d 49, 53 (4th Cir. 1989)). Put differently, the "purpose of abstention is to ensure that state courts may construe state law in a way that avoids unwarranted determinations of federal constitutional questions and to maintain comity between the state and federal courts." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)).

Accordingly, federal courts should not interfere with criminal proceedings or certain noncriminal judicial proceedings, "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996).

To determine whether *Younger* abstention is appropriate, courts conduct a three-step analysis. First, the court must determine whether the proceeding is one that might "warrant *Younger* abstention." *Air Evac EMS*, 37 F.4th at 96. If it does, the court must consider the "'additional factors' provided by *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), commonly known as the *Middlesex* factors." *Id.* (citing *Sprint Commc'ns, Inc., v. Jacobs*, 571 U.S. 69, 81 (2013)). Lastly, the court should consider whether an exception to *Younger* abstention applies. *Id*.

1. The State Action Qualifies as Criminal Proceedings under *Sprint*

*Younger* abstention may apply in "(1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings that are akin to a criminal prosecution in important respects (commonly referred to as 'quasi-criminal' proceedings), and (3) pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id*. at 96 (quotations omitted) (citing *Sprint*, 571 U.S. at 78–79, 81). The *Sprint* Court listed several factors to consider in determining whether a state civil enforcement is "akin to a criminal prosecution": "whether the enforcement is 'initiated to sanction the federal plaintiff,' the 'state actor is routinely a party to the state proceeding and often initiates the action' and '[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges.'" *Id.* at 97 (quoting *Sprint*, 571 U.S. at 79–80).

Here, the underlying case stems from Plaintiffs being held in contempt during a proceeding in Chesterfield County J&DR Court concerning Plaintiff Ongenge-Okwiri's alleged assault and battery of Plaintiff Dacha's child. *See* Am. Compl. ¶¶ 1–6. All of the non-monetary relief Plaintiffs seek involves this Court inserting itself into ongoing state court proceedings. Mot. TRO 4–5. Given the nature of the underlying state court proceedings, an alleged assault and battery

6

charge and contempt of court resulting in imprisonment, the Court finds that the matter involves ongoing state criminal proceedings, and therefore *Younger* abstention is warranted. *See* Va. Code Ann. § 18.2-57.2 (Assault and battery against a family or household member); *id.* § 18.2-57 (Assault and battery; penalty); *id.* §18.2-456 (Cases in which courts and judges may punish summarily for contempt).

### 2. The *Middlesex* Factors Support Abstention

The Court must now consider the *Middlesex* factors, which are: "(1) whether there is 'an ongoing state judicial proceeding'; (2) whether that state proceeding 'implicate[s] important state interests'; and (3) whether that state proceeding provides 'an adequate opportunity . . . to raise constitutional challenges.'" *Air Evac EMS*, 37 F.4th at 96 (quoting *Middlesex*, 457 U.S. at 432).

As an initial matter, both the first and third element weigh in favor of abstention. Although Plaintiffs posit that they do not seek to enjoin or interfere with any ongoing state proceedings, that is directly undermined in Plaintiffs' Motion for TRO and Plaintiff Dacha's appeal to the Virginia Court of Appeals. *See Boyd v. Consol Island Creek Coal*, 2017 WL 11490113, at *2 n.3 (S.D.W. Va. Nov. 13, 2017) (finding the *Younger* doctrine applied to a proceeding that Plaintiff had appealed to the "Virginia Supreme Court."). *Compare* Am. Compl. ¶ 23B ("This action does not seek to enjoin or interfere with any ongoing state proceeding"), *with* Mot. TRO 1–2 (requesting the Court to intervene in the scheduling and manner of conducting state court proceedings, as well as to intervene in related state-level discovery). There is no question that there is an ongoing state judicial proceeding, as Plaintiffs seek this Court's intervention in said proceedings. *See* Mot. TRO 1–2. Further, the third element is satisfied because Plaintiffs have the ability to raise their constitutional claims in state court and also have the ability to appeal any final orders made by the

7

J&DR Court.[6]  *Emps. Res. Mgt. Co. v. Shannon*, 65 F.3d 1126, 1136 (4th Cir. 1995) (citing *Martin Marietta Corp. v. Md. Comm'n on Human Rels.*, 38 F.3d 1392, 1396 (4th Cir. 1994)); *Lesane v. Bell*, 2024 WL 5056259, at *3 (E.D.N.C. Dec. 10, 2024) (finding that a "federal court need only determine that a state forum exists to hear a plaintiff's constitutional claim." (citing *Moore v. Sims*, 442 U.S. 415, 430 (1979)); Va. Code Ann. § 16.1-296 ("From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken to the circuit court within 10 days from the entry of a final judgment, order, or conviction and shall be heard de novo."); *see also Harper*, 396 F.3d at 355 ("[S]tate courts are fully competent to decide issues of federal law." (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993))).

Finally, as to the remaining element, there is little doubt that this case implicates an important state interest.  *See Harper*, 396 F.3d at 352 ("Many interests beyond criminal law are core sources of state authority.").  The Fourth Circuit has found "family relations" to be an important state interest.  *See id.* at 352 (collecting cases); *see, e.g.*, *Simopoulos v. Va. Bd. of Med.*, 644 F.2d 321 (4th Cir. 1981).  In fact, "[i]nterests like . . . family law, and criminal law lie at the heart of state sovereignty, and a failure to abstain in the face of ongoing state proceedings would disrespect the allocation of authority laid in place by the Framers." *Harper*, 396 F.3d at 354.  The Supreme Court has also explicitly held that contempt proceedings are an important state interest.  *Juidice v. Vail*, 430 U.S. 327, 336 (1977) ("Interference with the contempt process not only unduly interferes with the legitimate activities of the State, but also can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." (citation modified)

---

[6] Indeed, Plaintiff Dacha has appealed her contempt conviction to the Virginia Court of Appeals.  Am. Compl. ¶ 23.

(first quoting *Younger*, 401 U.S. at 44; and then *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975))); *see also Lepelletier v. Tran*, 633 F. App'x 126, 127 (4th Cir. 2016); *Moseley v. Gardiner*, 2021 WL 2449101, at *5 (E.D. Va. May 21, 2021).

It is clear that this factor is satisfied and weighs in favor of abstention because this case involves both family relations and contempt proceedings. Am. Compl. ¶¶ 1–7, 19–20, 23. Namely, the underlying state court proceedings concern familial interests, an alleged assault and battery, as well as Plaintiffs' subsequent arrest based on the state court's finding that Plaintiffs were in contempt during said hearing. *Id.* Both subject matters implicate important state interests, and are also subject to challenge and review by way of the state's own legal system. *See supra*. Thus, it would be inappropriate for this Court to encroach on how the Commonwealth of Virginia should address issues that "lie at the heart of state sovereignty." *Harper*, 396 F.3d at 354.

Finding that all factors weigh in favor of abstaining under *Younger* and *Middlesex*, the Court proceeds to its final analysis: whether an exception to the *Younger* doctrine applies in this case.

### 3. No Exception Applies

In "extraordinary circumstances," a federal court has the discretion to disregard "strong federal policy against federal court interference with pending state judicial proceedings." *Nivens v. Gilchrist*, 319 F.3d 151, 154 (4th Cir. 2003) (quoting *Middlesex*, 457 U.S. at 431). The "path to extraordinary circumstances is exceedingly narrow . . . . [a]nd . . . the availability of other defenses or claims—even constitutional ones [which often arise in criminal and quasi-criminal matters]—likewise will not do." *Air Evac EMS*, 37 F.4th at 100. Consequently, a federal court may only intervene when there has been "(1) 'bad faith or harassment' by state officials responsible for the prosecution; (2) a statute that is 'flagrantly and patently violative of express constitutional

9

prohibitions'; and (3) other 'extraordinary circumstances' or 'unusual situations.'" *Id*. at 96 (citing *Younger*, 401 U.S. at 49–54).

As a preliminary matter, the Court does not find that either the second or third exception applies, nor do Plaintiffs argue that they do. *See generally* Mem. Supp.[7] Moreover the Court does not find that Plaintiffs have sufficiently demonstrated, or even argued, that the bad faith exception applies. *See generally* Am. Compl; Mot. TRO. "'There is no case since *Younger* was decided in which the [Supreme] Court has found' the first *Younger* exception 'was applicable.'" *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 153 n.3 (4th Cir. 2024). "To prevail under the bad faith exception, the petitioner must show 'a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *Wood v. Olejasz*, 2021 WL 4450270, at *3 (N.D.W. Va. Aug. 10, 2021) (quoting *Suggs v. Brannon*, 804 F.2d 274, 278 (4th Cir. 1986)). It is a plaintiff's "heavy burden to overcome the bar" of the *Younger* abstention doctrine by setting forth more than "mere allegations of bad faith or harassment." *Gilbert, II, v. N.C. State Bar*, 660 F. Supp. 2d 636, 644 (E.D.N.C. 2009) (quoting *Weitzel v. Div. of Occupational & Pro. Licensing*, 240 F.3d 871, 877 (10th Cir. 2001)). Plaintiffs make no qualifying claim. *See generally* Am. Compl.; Mot. TRO. As such, the Court finds that no exception to the *Younger* abstention doctrine applies in the present case, and so abstention is appropriate here.

---

[7] With respect to the second exception, "the Supreme Court defined the 'flagrantly and patently' unconstitutional exceptions with greater specificity and more narrowly as requiring invalidity 'in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' a standard so rigorous as to make the exception . . . 'meaningless.'" *Simopoulos v. Va. Bd. of Med.*, 644 F.2d 321, 329 (4th Cir. 1981). Plaintiffs do not argue or identify any statute implicated by this case that is "flagrantly or patently" unconstitutional. *See generally* Mem. Supp. As for the third exception, Fourth Circuit precedent "suggest[s] there must be actual impediments to the state's ability to address the federal issues." *Air Evac EMS*, 37 F.4th at 100 (citing *Simopoulos*, 644 F.2d at 327–29 for the proposition "that the bad faith and patent unconstitutionality exceptions to *Younger* abstention apply 'if the state procedure fails to provide the federal plaintiff with an adequate opportunity to litigate in the state forum'"). As addressed *supra* Part IV.A.2, there is an adequate opportunity for Plaintiff to litigate the issues complained of in the present suit in the state forum.

**B. Plaintiffs' Temporary Restraining Order**

Finding it appropriate to abstain from hearing the case in its entirety under the *Younger* doctrine, the Court does not reach the merits of the Temporary Restraining Order and will deny it accordingly.[8]

## V. CONCLUSION

For the reasons discussed above, the Court will deny Plaintiffs' Motion for TRO and will dismiss the action without prejudice. An appropriate order will follow.

/s/ RCY
Roderick C. Young
United States District Judge

Date: July 18, 2025
Richmond, Virginia

---

[8] The Court notes that even if it had found that *Younger* did not apply, the Court would have denied Plaintiffs' Motion for TRO on the basis that Plaintiffs failed to demonstrate irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20–21 (2008). Irreparable harm must be "actual and imminent," not "remote or speculative." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). The assertion of irreparable harm fails in this instance because Plaintiffs' fear of retaliation and another assault encompass only *possible* outcomes of the impending July 22, 2025 hearing before Defendant Landry. *See Winter*, 555 U.S. at 21; *see also Morgensen v. Welch*, 707 F. Supp. 3d 604, 614 (W.D. Va. 2023) ("This assertion of irreparable harm fails [] because the loss of the animals, as *one* potential outcome of the hearing, is speculative."). Without more, Plaintiffs fail to demonstrate that the "fear[ed]" retaliation or assault are, in fact, "actual or imminent."